UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLORIE JOHNSON,<br>  Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>  Defendant. | Case No. 23-cv-02336-DMR<br><br>**ORDER ON MOTION TO DISMISS**<br>Re: Dkt. No. 16 |

Defendant United States moves to dismiss portions of Plaintiff Florie Johnson's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [Docket No. 16.] This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the motion is granted.

**I.   BACKGROUND**

   **A.   Factual Background**

Johnson is a 62-year-old African American woman. Since 2018, she has received primary care medical treatment at the University of California, San Francisco Medical Center ("UCSF"), which is operated by the Regents of the University of California ("UC Regents"). She also receives medical services from the United States Department of Veterans Affairs ("VA"). Compl. ¶¶ 2, 14. Johnson is a cancer survivor and has a history of "painful podiatry issues that have required removal of excess skin growth under anesthesia." *Id.* at ¶ 15.

In 2021, orthopedic surgeon Rosanna Wustrack, M.D., scheduled Johnson for bone biopsy surgery and an "invasive podiatry procedure, to be performed under anesthesia due to the known pain associated with each procedure." *Id.* at ¶ 16. Johnson went to UCSF for the procedures on April 4, 2021. After her arrival, two nurses took Johnson's vitals and asked her preliminary questions. Johnson alleges that Sean Kennedy, M.D., a licensed podiatrist employed by the VA, entered the operating room and "began intentionally cutting Plaintiff's foot while she was awake,

alert and screaming in pain," even though the procedure was supposed to be performed with anesthesia. She alleges that Kennedy "acted outside of reasonable medical standards and [her] informed consent." *Id*. at ¶¶ 4, 18, 19. Johnson "begged Kennedy to stop because she could feel the excruciating procedure and made clear that he was hurting her and that he did not have her consent to continue." She alleges that Kennedy ignored her and continued to cut her foot. *Id*. at ¶¶ 20, 21. Kennedy only stopped "when a white nurse told him to stop, and scolded him for not believing and for ignoring her complaints of pain." Kennedy then left the room "in a ruthless combination of indifference and malice." *Id*. at ¶¶ 22, 23.

Johnson alleges on information and belief that "Kennedy's actions were spurned [sic] by racism and sexism, that he treated Plaintiff differently because she is African American and that she is a woman" and that "he ignored her and he did not care about her pain because of her race and sex." *Id*. at ¶ 26. She alleges that "[h]ad she been white or male Kennedy would not have acted with such indifference, intentional brutality, and absolute cruelty." *Id*. at ¶ 27. Johnson alleges that "this act of overt medical racism happened at the University of California's most modern facilities, utilizing a medical professional from the Veterans Administration, and in the twenty-first century," and that the incident "[h]arken[ed] back to the days where surgical procedures were performed on African slaves without anesthesia." *Id*. at ¶ 28. She alleges that she was traumatized by the incident and "violation of her body and her trust." *Id*. at ¶ 29.

Johnson lodged a complaint regarding "Kennedy's intentional, racist and sexist assaults against her." A UCSF Grievance Coordinator apologized to her and she subsequently received a letter from UCSF's Department of Orthopedic Surgery confirming that "the original plan was for [Johnson] to have both procedures done under general anesthesia." *Id*. at ¶¶ 29-31.

Johnson alleges that she experienced "insufferable and excruciating pain" and that she continues to be traumatized by Kennedy's actions and is distrustful of medical professionals. *Id*. at ¶¶ 41-43, 45, 47, 52.

### B. Procedural History

Johnson filed the complaint on May 12, 2023 against the United States, the UC Regents, and Kennedy alleging the following claims for relief: 1) negligence against the United States; 2)

1    negligence against the UC Regents; 3) negligent hiring and supervision against the United States
2    and the UC Regents; 4) medical battery against Kennedy; 5) intentional infliction of emotional
3    distress against Kennedy; and 6) violation of California's Unruh Act, California Civil Code
4    section 51 and 52, against Kennedy and the UC Regents.  Johnson later voluntarily dismissed her
5    claims against the UC Regents and Kennedy.  [Docket Nos. 12, 22.]  The sole remaining
6    defendant is the United States.
7    　　　　The United States now moves for an order substituting it as the Defendant in place of
8    Kennedy for claims 4, 5, and 6.  It moves to dismiss claims 3, 4, and 6 and Johnson's claims for
9    attorneys' fees and punitive damages.  At this time the United States does not challenge claims 1
10   (negligence) or 5 (intentional infliction of emotional distress).  Mot. 3, 4.

## II.     LEGAL STANDARDS

12   　　　　A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject
13   matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  A court will dismiss a party's claim for lack of
14   subject matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by
15   prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve
16   a federal controversy."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation
17   and quotation marks omitted); *see* Fed. R. Civ. P. 12(b)(1).  The challenging party may make a
18   facial or factual attack challenging subject matter jurisdiction.  *White v. Lee*, 227 F.3d 1214, 1242
19   (9th Cir. 2000).  A facial challenge asserts that "the allegations contained in a complaint are
20   insufficient on their face to invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d
21   1035, 1039 (9th Cir. 2004).  In contrast, a factual attack disputes "the truth of the allegations that,
22   by themselves, would otherwise invoke federal jurisdiction."  *Id*. at 1039.  A factual challenge
23   permits the court to look beyond the complaint, without "presum[ing] the truthfulness of the
24   plaintiff's allegations."  *White*, 227 F.3d at 1242 (citation omitted).  Even the presence of disputed
25   material facts "will not preclude the trial court from evaluating for itself the merits of
26   jurisdictional claims."  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations
27   omitted).
28   　　　　A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in

3

the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94, and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief," *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

## III. DISCUSSION

The United States moves for an order substituting it as the Defendant in place of Kennedy (claims 4-6). It also moves to dismiss: (1) claim 3 for lack of subject matter jurisdiction; (2) claims 3, 4, and 6 for failure to state a claim; and (3) Johnson's claims for attorneys' fees and punitive damages on the ground that they are not available in actions against the federal government.

Johnson does not oppose the request to substitute the United States as the Defendant for Kennedy. She also does not oppose the dismissal of claim 3 (negligent hiring and supervision), and her claims for attorneys' fees and punitive damages. Opp'n 4. The remaining disputes in this motion are whether Johnson's complaint states a claim against the United States for medical battery and violation of the Unruh Act.

### A. Medical Battery

The complaint alleges that Kennedy committed a medical battery when he "performed a medical procedure without" Johnson's consent, and that she "did not consent to his cutting her with a knife while she was awake and under no anesthesia." Compl. ¶¶ 80, 84. The United States moves to dismiss this claim because the allegations "sound in medical negligence and not in

4

intentional medical battery." Mot. 13.

"A battery is an intentional and offensive touching of a person who has not consented to the touching" and "[i]t is well settled that a physician who performs a medical procedure without the patient's consent commits a battery irrespective of the skill or care used." *Conte v. Girard Orthopaedic Surgeons Med. Grp., Inc.*, 107 Cal. App. 4th 1260, 1266-67 (2003)). "Generally, one who consents to a touching cannot recover in an action for battery." *Id.* at 1266. "Where a doctor obtains consent of the patient to perform one type of treatment and subsequently performs a substantially different treatment for which consent was not obtained, there is a clear case of battery." *Piedra v. Dugan*, 123 Cal. App. 4th 1483, 1495 (2004) (quoting *Cobbs v. Grant*, 8 Cal.3d 229, 239 (1972)). Lack of informed consent is a separate, distinct claim. "A claim based on lack of informed consent—which sounds in negligence—arises when the doctor performs a procedure without first adequately disclosing the risks and alternatives." *Saxena v. Goffney*, 159 Cal. App. 4th 316, 324 (2008). *See, e.g., Warne v. City & Cnty. of San Francisco*, No. 16-CV-06773-JSC, 2017 WL 2834050, at *11 (N.D. Cal. June 30, 2017) ("[c]ourts typically apply a negligence theory, rather than medical battery, in cases in which the defendant has 'performed the identical operation to which plaintiff had consented' but is alleged to have failed to have informed the plaintiff of all the other options and inherent risks of the procedure.").

The government argues "there is no doubt that [Johnson] consented to some treatment," since the complaint alleges that Wustrack scheduled her for "an invasive podiatry procedure" and Johnson went to UCSF for that procedure on April 4, 2017. Mot. 12 (citing Compl. ¶¶ 16-17). The complaint does not allege that Kennedy performed a procedure that was "substantially different" from the procedure to which Johnson consented; in fact, the complaint does not identify the particular procedure that was scheduled, describing it only as "an invasive podiatry procedure." *See* Compl. ¶ 16.

In response, Johnson does not argue that Kennedy performed a "substantially different treatment for which [Johnson's] consent was not obtained." Instead, she pivots to a new theory: that she conditioned her consent to the procedure on the use of anesthesia. She contends that "[t]he moment Dr. Kennedy began cutting her foot without anesthesia, and she cried in pain and

5

1    begged him to stop, her conditional consent was withdrawn and Kennedy intentional[ly] went

2    ahead anyway." Opp'n 9.

3       Under California law, "[e]ven if a patient consents to treatment, if the patient places

4    conditions on that consent, the physician may be liable for battery if he or she exceeds those

5    conditions." *Piedra*, 123 Cal. App. 4th at 1497. "There are three elements to a claim for medical

6    battery under a violation of conditional consent: the patient must show his consent was

7    conditional; the doctor intentionally violated the condition while providing treatment; and the

8    patient suffered harm as a result of the doctor's violation of the condition." *Conte*, 107 Cal. App.

9    4th at 1269. Here, the complaint does not adequately plead a medical battery claim based on

10   violation of conditional consent because it does not allege that Johnson gave conditional consent

11   to the as-yet unnamed procedure or that Kennedy "intentionally violated the condition."

12      The court cannot say amendment would be futile. *Gardner v. Martino*, 563 F.3d 981, 990

13   (9th Cir. 2009). Therefore, Johnson may file an amended complaint to plead a conditional consent

14   medical battery claim. An amended claim should include the procedure performed and the

15   condition Johnson placed on her consent to the procedure, as well as facts leading to a reasonable

16   inference that Kennedy "intentionally violated the condition placed on the patient's consent." *See*

17   *Piedra*, 123 Cal. App. 4th at 1498-99 (internal citations omitted) (explaining that "[b]attery is an

18   intentional tort" and affirming nonsuit on medical battery claim where "there was no evidence

19   [doctor] had actual knowledge of the condition and thus intentionally violated the scope of the

20   [patient's] consent").

21      **B.   Unruh Act**

22   The Unruh Act prohibits business establishments from discriminating based on protected

23   characteristics, including race and sex. Cal. Civ. Code §§ 51(a), (b). The complaint alleges that

24   "Kennedy denied full and equal services to Ms. Johnson, and a motivating factor for his doing so

25   was her race and her sex." Compl. ¶ 97. "To state a claim under the Unruh Act, a plaintiff must

26   allege: '(1) she suffered discrimination in a business establishment; (2) her protected status was a

27   motivating factor; (3) the defendant's action was the result of its intentional discrimination against

28   the plaintiff; and (4) the wrongful conduct caused her to suffer injury." *Kelly v. CubeSmart*, No.

United States District Court
Northern District of California

22-CV-05470-HSG, 2023 WL 4108187, at *5 (N.D. Cal. June 21, 2023) (quoting *H.M. v. Cnty. of Kern*, No. 1:20-CV-1339 JLT BAK (BAM), 2022 WL 286614, at *3 (E.D. Cal. Jan. 31, 2022)). (quotations omitted).

The United States argues that the complaint does not contain facts indicating that Kennedy intentionally discriminated against Johnson based on her race or sex. The complaint alleges on information and belief that "Kennedy's actions were spurned [sic] by racism and sexism, and that he treated Plaintiff differently because she is African American and that she is a woman" and that "[h]ad she been white or male Kennedy would not have acted with such indifference, intentional brutality, and absolute cruelty." *Id*. at ¶ 26, 27. These allegations are entirely conclusory. There are no facts in the complaint that support a reasonable inference that race or sex was a motivating factor in Kennedy's alleged misconduct. For example, the complaint does not allege any "comments, conduct, or instances where others were treated differently that would support her claims" of discrimination. *See Kelly*, 2023 WL 4108187, at *5 (dismissing Unruh Act claim for failure to plead non-conclusory allegations of discrimination). Accordingly, the Unruh Act claim is dismissed with leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, the United States is substituted for Kennedy as the Defendant in claims 4, 5, and 6. Claim 3 for negligent hiring and supervision and the claims for attorneys' fees and punitive damages are dismissed with prejudice. Johnson's claims for medical battery and violation of the Unruh Act are dismissed with leave to amend. Any amended complaint must be filed within 21 days of the date of this Order.

The January 17, 2024 initial case management conference is vacated and continued to March 20, 2024 at 1:30 p.m. by Zoom. The parties shall file a joint case management conference statement by March 13, 2024.

**IT IS SO ORDERED.**

Dated: January 8, 2024



Donna M. Ryu
Chief Magistrate Judge

7